May it please the Court, Kevin Bankston. For Carolyn Jewel and her fellow plaintiff appellants in Jewel v. NSA, I will be splitting argument with Mr. Mazzel, representing the Schubert plaintiffs. I intend to use 11 of our 15 minutes, 3 of those for rebuttal. He intends to use 4 of our 15 minutes, 1 of those for rebuttal. Your Honors, I'm here today to make 3 basic points. First, that plaintiffs have specifically alleged in a complaint replete with factual detail based on voluminous evidence in the public record that their own communications and communications records have been acquired by the government. These are concrete injuries, in fact, to their statutory and constitutional rights that are more than sufficient to establish standing at the motion to dismiss phase, and the district court erred in concluding that these widespread but concrete injuries represented a generalized grievance. Second, there is a sufficient record, and the time is ripe for this court to rule in the interest of judicial economy and speedy justice, that the procedures for handling secret evidence relating to electronic surveillance laid out in the Foreign Intelligence Surveillance Act at Section 1806F displaces the state secrets privilege here. Third, that even if FISA did not preempt the privilege, there is not a sufficient record for the court to conclude that state secrets will inevitably require dismissal of all of our claims as the government contends. Rather, the case should be remanded to the district court to determine if our claims can proceed based solely on non-privileged evidence, just as happened in Kazaa and in the Reynolds case. Again, only if you find that 1806F does not preempt the privilege in this case. As the government's brief focuses on state secrets dismissal rather than on the district court's generalized grievance grounds, I'd prefer to focus my comments on my second point, the preemption of state secrets by FISA's 1806F. Now, do you, it seemed that there was some potential disagreement between you and your co-counsel for Ms. Schubert as to whether we ought to address that issue, or do you both agree? I believe we both agree at this point that it would be best for the court to address this issue now. Considering that it is a purely legal issue, the record has been developed enough for you to decide it. Why wouldn't we wait on this issue and defer to the other appeal that's up here on that precise issue without the standing question, the al-Haramein case? Well, the al-Haramein case, it's very possible that might be disposed of without addressing 1806F, noting that ultimately the al-Haramein plaintiffs never had to use the procedures of 1806F to establish their prima facie case. So there's a distinct possibility you won't reach it in that case. And even if you do, you've only, the parties have only begun briefing that. It will be quite a while likely before you reach it. And we're still stuck at the starting gate after three years in this lawsuit, which was brought after another lawsuit brought several years prior to that. We'd love to get to the merits issues, and a ruling on 1806F now would allow us to move forward. The district court dismissed on standing? Yes, Your Honor. The district court found that we had not sufficiently pled injury in fact, but he did so on a generalized grievance rationale that the government never argued, and that the government doesn't strictly stand behind now, saying that we had failed to allege facts that differentiated the injury that our plaintiffs suffered from the injury suffered by every other AT&T user whose communications and records have been acquired by the government. This was a misunderstanding of the precedent on generalized grievance where the Supreme Court has made very clear over time and perhaps most recently and forcefully in Massachusetts v. EPA that a grievance must be both widely shared and abstract for it to be a generalized grievance. But the district court did not reach the other issue, correct? The district court did not reach the issue of state secrets or 1806F. The issue as the basic issue, as I understand it, is whether your client has standing. The district court, sua sponte, took up this standing issue. It was not briefed nor argued. Is that correct? That is correct, Judge Pregerson. All right. So if you succeed on that, why shouldn't we send it back to the district court and let you raise the state secrets privilege issue there? That's certainly an option, Judge Pregerson. However, by urging as an alternative grounds for the dismissal state secrets, the government has put squarely at issue whether or not 1806F preempts state secrets. Therefore, certainly this panel could not reach the issue of whether state secrets requires dismissal without first considering whether or not 1806F preempts state secrets in the first instance. Oh, I understand. So the district court said your injury isn't particularized or concrete. Is that correct? He didn't. The district court seemed to say that we had, and explicitly did say, we had failed to differentiate our plaintiff's injuries from those of the other AT&T users, basically concluding that so long as everyone is being surveilled, no one has standing to sue. However, no such differentiation is necessary. And even if it were, these are differentiated, particularized injuries. The injury to Carolyn Jewell from the interception of her e-mails is quite different from the injury suffered by another plaintiff, Joyce Walton, and the interception of her e-mails. It is as much a particularized and differentiated and concrete injury as if their own homes had been searched. It is not abstract, say, such as a taxpayer or citizen's interest in the, you know, just application of the law. But even a mass tort would provide enough particularized injury generally. For example, even if you're suing on behalf of multitudes of those who had actually been surveilled, in your view, those generally would be the kind of injury that there would be standing, right? Absolutely, Your Honor. And, in fact, we do sue on behalf of a class of AT&T customers. But I think the Supreme Court put it most forcefully in its recent Massachusetts VEPA case, where it stated that to deny standing to persons who are, in fact, injured simply because many others are also injured would mean that the most injurious and widespread government actions could be questioned by nobody. They could not accept that conclusion, nor should this panel. However, I would like to, in my remaining minute of primary argument, return to the subject of 1806F. In 1806F, 30 years ago, in response to widespread executive abuse of its surveillance powers, Congress crafted a comprehensive regime to regulate electronic surveillance by the government, and that included a detailed and balanced procedure for courts to consider the legality of even the most secret foreign intelligence surveillance through the procedures of 1806F. This is an exceptionally protective procedure. To the extent the government asserts that disclosure would harm national security, i.e., that these are state secrets, materials related to the electronic surveillance would only be examined in camera and ex parte by the district court and only released to the plaintiffs if the court finds it necessary to determine the legality of the surveillance. And even then, it would be within the discretion of the court. So this is a very protective procedure that we think directly speaks to the operation of state secrecy in electronic surveillance cases, and I'd like to reserve my remaining three minutes for rebuttal. Thank you. We can hear you whispering there, Judge Pragerson. That's all right. Okay, good. I'm used to it. I didn't want to whisper. I love surveillance. You hear what I said? I live with it every day. Can you hear me? Don't tell him it's an open courtroom here. Okay. You may proceed. May it please the court, Your Honors. Ilan Mizelf for the Shubert Plaintiffs. Ilan Mizelf. Can you hear me, Judge Pragerson? Yes. I'm not sure which button to push, but if you can hear me, that's fine. Ilan Mizelf for the Shubert Plaintiffs Appellants. We do agree upon reflection that the court should reach the 1806F issue. So that's a switch of your position. It is. All right, well, then I won't ask you why. I'll just take it on face value. Okay. It is a pure issue of law, and it was fully briefed before the district court, and indeed all these state secrets issues were fully briefed before the district court, and then the court ruled on an issue that no one had briefed or argued, this generalized grievance point. You do agree that as a matter of jurisprudence, that was an appropriate issue for the judge to address whether you raised it or not, correct? Without question. It's always appropriate for a court to raise standing. We don't believe there's any question as to standing here. As Mr. Bankson argued, every single plaintiff has suffered an individual injury by being wiretapped, and the generalized grievance doctrine, as the Aikens Court said, only applies where injuries are abstract and indefinite. It doesn't matter if they're widespread. They must also be abstract and indefinite, which is not the case. On the 1806 F point, the statute is absolutely clear that when a motion or request is made for discovery involving materials relating to electronic surveillance, 1806 F applies. That is exactly this case. It applies whether it's a FISA claim or whether it's another claim. That was the holding in the ACLU v. Barr case in the D.C. Circuit. That was stated explicitly in the legislative history to the statute. So we have a fairly, I believe, straightforward case of preemption of a common law privilege in the form of 1806 F. Hasn't this issue already been decided at the district court level? The issue was decided in Al-Haramain. This very panel remanded that issue to the district court, then Judge Walker, and he determined that, indeed, FISA does preempt the privilege, correct? That is correct, Your Honor. And that case is on its way up to us, and that case predates these cases, doesn't it? I'm not sure if it predates the Schubert case. We filed this case many years ago. I'm not sure about the timing. I do know that that case has preceded the judgment, and we're still at the motion to dismiss stage after many, many years. Doesn't it seem a little out of step, though, that we would decide that issue in this case before getting to the case at Al-Haramain? Looking at the ‑‑ I agree with Mr. Bankson. I think there's a substantial possibility, if not probability, that the court may not reach that issue because of the particular facts in that case. There was no 1806 F discovery used in that case. They proved their case based on public evidence alone. So the court may very well ‑‑ this panel may not reach that issue at all. I think it's perhaps even likely it won't reach the issue. And it is an important legal issue that affects the Jewell case and the Schubert case and is right for decision. It's a pure legal issue whether the statute preempts the common law. And what is your best case when you have a common law privilege, such as the state secrets privilege, for statutory preemption in a case like this where it doesn't ‑‑ neither references affirmatively or negatively anything that would tell you the answer? I think the Halperin case in the Second Circuit, that was in case 258 F. 2nd. 36, involving the Invention Secrecy Act. There, there wasn't even a particular statute. There wasn't a particular section like 1806 F. But the court ruled that the existence of the act itself meant that if the plaintiffs were to recover, the state secrets privilege must be preempted, simply by the existence of a private cause of action. Here we not only have a private cause of action for violations of the government involving electronic surveillance, we have a specific section, 1806 F, that squarely addresses that issue. I realize that we want to leave a little time for rebuttal, so I will save my minute for rebuttal unless the court has questions. Thank you. There's none. May it please the court, I'm Thomas Byron from the Department of Justice, here on behalf of the government defendants in both Jewell and Schubert. As we emphasized in our brief in this case, the court may affirm on either of two alternative grounds. And the first, which is founded in the discussion in the district court's decision below, is the question of prudential standing, which is a separate doctrine, of course, but related to the inquiry of Article III standing. And the generalized grievance principles have roots in both parts of that inquiry. As we explained in our brief in this case, the generalized grievance concern in the prudential context, we think offers a good basis for explaining why this litigation need not be resolved in federal court in light of the oversight of the political branches, both legislative and executive, which provides a better opportunity for oversight and resolution of the concerns raised concerning nationwide policies of alleged surveillance in these complaints. If these plaintiffs don't have standing, who would? Your Honor, I don't know that anyone necessarily would have standing to raise the particular claims at issue in these two cases. The district court here has distinguished these kinds of claims, those that have been raised against the government defendants, and that concern these nationwide policies of alleged content, dragnet surveillance, and record surveillance in the Jewell case. And we think that those particular claims, as against the government defendants in particular, demonstrate the kinds of concerns that the prudential standing doctrine exists to accommodate and ensure that the federal courts are not asked to go beyond the role that they have set for themselves. You're not suggesting the state court is the place for this to be? No, Your Honor. Okay. So the concern I have is that the argument you make basically infuses national security concerns into the standing doctrine and in effect cuts off the plaintiffs of the past unable to ever pursue a claim and in effect almost deciding on the merits on national security grounds that they don't even have the ability to pursue a claim. And I don't know what the precedent would be for such a position that the government is taking. Justice McKeon, we don't intend to urge such a sweeping doctrinal rule for disposition of these cases. We think instead that prudential standing, like every standing analysis, is appropriately undertaken on a case-by-case basis and that the unique circumstances of the kinds of claims at issue here against these defendants are those that are better suited to resolution before the representative branches of our government. Well, now you sound like a political question almost. And so my question to you is if I were to hand you a blank slate and say, what is the holding in this case with respect to standing that then doesn't implicate these other issues, what would be the holding in your view that would support your position? I think this court could hold that on the basis of the particular claims and allegations here which seek to challenge alleged content dragnet surveillance and record surveillance by the NSA in the foreign intelligence surveillance context, as alleged, that in those circumstances against these defendants, this case seeks to challenge national questions of policymaking in the national security and foreign intelligence areas that are better suited to resolution, as we've explained, before the representative branches. Now, that doesn't mean that no plaintiff could ever, and it would, of course, be a question for the court to resolve based on the particular claims against the particular defendants. So what rule would the judiciary have if your approach is adopted? Judge Ferguson, I think that the... I mean, we just get out of the way? Is that it? Well, Judge Ferguson, I think the prudential standing doctrine reflects an assessment by the courts that they need not go to the full extent of their Article III powers in every instance, that there is a narrow category, a subset of cases in which, as a prudential matter, as a result of the court's assessment of its own balancing of the separation of powers concerns, it may be appropriate to step aside for that narrow category of cases. And so how would that work here, in your view? We think that the district court's order of dismissal can be upheld on this basis, Your Honor. The court's order, I think, at page 15 of the record excerpts in the Jewell case, page 15 of the order itself, does refer to this concern about the representative branches being better suited to resolution of certain narrow kinds of cases and claims. So even though, hypothetically, they may have a claim under 1806 and even have a possibility of going forward in the face of a state secrets doctrine, if we were to apply that, your answer would be, well, sorry, you never get to get there. Just as a matter of prudential standing, you're not even going to be able to argue claims that you might even have statutorily. Judge McHugh, first of all, let me just emphasize, we don't think they do have a claim under section 1806. Oh, I understand you disagree. Sure. I think it's important, actually, to turn briefly. But aren't we then basically turning this into a Mobius strip where we're moving standing into the claims, which, you know, last term the court was trying to distinguish, as it did in Morrison, between claims and jurisdiction and standing, Thompson case, Morrison case. You're basically having us decided at the front end without any ability to actually rule on the area that you disagree on with them, and that is, is there a claim even under 1806? And I'm not sure if that suggests prudence by the courts or abdication. Judge McHugh, I understand the concern. And I don't mean to suggest that this is an argument that we make lightly or that it would be applied more generally to other kinds of cases. We do think this is an unusual case before the court, and we've urged drawing on these principles that exist in the standing jurisprudence that we think this is an appropriate application of it here. Nevertheless, turning, I think, as your question suggests, to the state secrets question, it would also offer an alternative ground for disposition if the court decides to reach that issue, and in itself would also warrant disposition, dismissal, in fact, without reaching those initial questions, we think, of whether there's a cause of action under any particular statute. So in that sense, I don't think the two inquiries are that different, although they're different in other ways, of course. And so if I may turn then to the state secrets. Just before you do, counsel, it's correct, isn't it, that this same district court judge said the hefting plaintiffs had standing? That's right, Your Honor, and the hefting plaintiffs. What do we make of that? Well, it's hard to know, of course. The district court here did single out the policymaking aspects in the opinion below, and we think that that indicates a recognition of one of the things we've emphasized, which is that this suit against the government agencies and officials may reflect a better disposition before the representative branches, which have the capacity to oversee the conduct of the government agencies at issue here, whereas in hefting, of course, the defendants are different. You're just speculating. We are, with respect to the district court's possible distinctions between the two, Your Honor, of course, because the court didn't address that question. Yeah, and the perspicuity of the legislative branch. I mean, there's a lot of fiction surrounding that concept. Well, I don't know that it's fiction, Your Honor. In the context of these cases and the related cases that have been pending before the district court and have been to this court over the last few years, the legislative branch and the executive branch have both actively been overseeing the conduct of foreign intelligence surveillance questions by the government agencies, and those questions of oversight have not been neglected by the representative branch, as I would say. Turning it over. Before you turn it over, let's finish with Judge Pregerson first. I mean, but the judiciary plays a role. To be sure, Judge Pregerson. In our system. Yes, Your Honor. And we don't mean to dismiss that. You're asking us to abdicate that role. No, Your Honor. What I'm asking is that if the court deems it appropriate to do so, we think that, as we emphasized in the footnote in our brief, this question, of course, was not raised below by any party, and we believe it's appropriate if the court seeks to do so that the court may reach it. We don't think there's an obligation to do so. We've briefed it because we think that we wanted to inform the court about the parameters of the doctrine as we understand it, but it is a question of this court's discretion whether to reach that issue. And so we'll leave it in your hands, Your Honor. Thank you. Thank you. Well, I had a question then really goes to the appellant's argument on this point. In their brief, they quote a section from the Hefting decision, which is probably familiar to you, where the court says, throughout the complaint, plaintiffs generally describe the injuries they have allegedly suffered because of ATT's illegal conduct and its collaboration with the government. And that's the foundation for the district court saying they're standing here and we can go forward with the case. They then posit, which is probably a good way to do it, they say just reverse ATT and the government, and what you have here is plaintiffs telling you the injuries they suffered because of the government's conduct in collaboration with ATT and the others. And it seems to me that in that point that essentially the cases are in parallel ground for standing and leaving aside the contract issue, which is not implicated in the court's statement here. Why wouldn't that be the case? Your Honor, I think it may well be the case. But we also think there may be distinctions between the two. The district court's decision in Hefting as in any case in which the court doesn't reach questions concerning jurisprudence or jurisdiction or related principles doesn't necessarily constitute a holding on those questions that were not reached. The court in that case, of course, didn't reach questions of prudential standing, and that's the argument we've raised here. So we don't think there's necessarily a conflict. But if I may turn to the state secret's privilege and its effect on this litigation, I think it's important to recognize because plaintiff's counsel has urged that this court decide the 1806F displacement question that they raised in their reply briefs, that we think this court need not decide that question in order to resolve the effect of the state secret's privilege in this case because, as we explained and as the district court here suggested below, in this case and held in the Al-Haramin case, a plaintiff, in order to demonstrate standing, may not rely on information subject to the state secret's privilege in order to demonstrate that the plaintiff is an aggrieved person within the meaning of FISA itself or to demonstrate standing as well. We think that because of that, there is no basis for even considering 1806F displacement and the effect of the state secret's privilege in these two cases, therefore, can be considered without resolving that question in the first instance. If the court were to disagree and were to conclude that it believes that it's necessary to resolve the question of displacement On that point, you're saying that they, as a matter of pleading, they would not meet the aggrieved person status? Actually, Your Honor, I think it's not just as a matter of pleading. I think it's a matter of, as the court in bank in this circuit has held in Mohammed, that just as a matter of looking ahead at how the litigation could proceed, there is no way for plaintiffs to establish their standing as a final matter at the end of the conclusion of the litigation without relying on matters that are subject to the state secret's privilege. And we think that's ultimately dispositive of this case. That as in Mohammed, there is simply no way, even if they could establish a prima facie case, there is simply no way for the litigation to proceed without risk of divulging those very questions of privileged information that would cause, as the Director of National Intelligence has explained, exceptionally grave damage to national security if disclosed. We know from prior cases that a great deal of information is in the public domain. Wouldn't it be better for the district court to sort all that out vis-à-vis this case to make that determination rather than to do it first on appeal? Judge McKeon, let me just say at the outset, first of all, again, this is a question for this court's discretionary determination. We're not urging that the court must reach this question by any means. We think instead, however, that it is clear on this record, and this court is certainly competent to reach those determinations as the en banc court in Mohammed held. It need not remand. And we think as the Mohammed court emphasized, there are grave risks in remanding. Are you talking about Jeppesen? Yes, Your Honor. The Jeppesen case? That's right. Doesn't the majority opinion say that the best practice is to have the district court do this? I think that's right, Judge Hawkins, but as the court emphasized, the majority opinion in that case emphasized, as Your Honor knows better than most, in that case the court recognized the risks of remand and concluded that it was equally well-suited as the district court to resolve those questions. For that case? In that case, certainly, Your Honor. We think the same principles apply here, and that a review of the materials supporting the state secret's privilege in these cases, both on the public record and those that were classified and submitted to the district court in this cortex parte. Even though discovery, if it went back to the district court, and discovery revealed that one or more of the plaintiffs had e-mail or telephone conversations intercepted that had nothing to do with national security? I don't – I'm not sure how that would come about, Your Honor, and I don't think that the plaintiffs here have actually urged that that's a basis for their claims, although perhaps I misunderstand their claims in that respect. I do think that a review of the assertion of the privilege explains why this case could not go forward without such a grave risk of divulging – I'm sorry, I say that over my time, if I may. Please answer, all right? Without divulging that privileged information that would cause such exceptionally grave damage to national security. And let me just say, if I may, about the 1806F displacement issue, Judge McKeon, as you recognized, it is properly presented in the Al-Haramain appeal that is now pending before this court and in which briefing is ongoing. We think that that's the case that should resolve the question in the first instance. If the court in this case, in these two consolidated cases, concludes that it's appropriate to resolve the question here, whether in the first instance or after decision in that case, if, for example, the panel in that case doesn't resolve the question there, the government would, of course, be willing to submit a supplemental briefing to ensure that briefing is complete on that question in these cases as well, and we would await the court's order in order to do that. If the court has no further questions. Appears not. Thank you. We urge affirmance on either of the alternative grounds. Thank you. Thank you. Thank you, Your Honors. I think it's important to note that the government has apparently conceded that we do have Article III standing, that we have properly alleged injuries in fact for Article III purposes, and also concedes that this unprecedented prudential standing argument that they are pressing would not require you to dismiss even if it were correct, which it affirmatively is not. As the Supreme Court has repeatedly made clear, the courts do not have any prudential authority to decline to hear a case that Congress has created express statutory causes of action for, and we have brought this case under a trio of exclusive, comprehensive statutes concerning electronic surveillance, interception, and communications records. Nor has any court ever held that state secrets operates as a prudential bar, and this court should decline the invitation to take that unprecedented step. The district court got it right in Hapting. The injuries we alleged there, which are the same injuries we allege here,  To jump to state secrets briefly, the government seemed to indicate that we had not, as a matter of pleading, established our aggrieved person status. That is incorrect. Aggrieved person is a defined term. It means subject to electronic surveillance. We have clearly pled that our plaintiffs were subjected to electronic surveillance. To the extent Muhammad has any impact at all here, or rather, to the extent 1806F preempts state secrets, Muhammad would have no impact here, and as argued previously, 1806F does preempt. On the aggrieved person point, we have dealt with this extensively in our brief, but nothing in the plain language requires the court to read that term as demonstrated aggrieved person, and, in fact, to require us to make a factual showing based on that. Importantly, that term is also the term used to define who can bring a FISA claim. If you were to read that as demonstrated aggrieved person, that would require anyone who wants to sue under FISA, or frankly any other statute that requires aggrievement under the statute, to prove their case in their complaint. Yet the legislative history makes absolutely clear Congress had no heightened pleading standard intended. Similar to the Supreme Court noting regarding the Wiretap Act's use of the aggrieved person term, Congress meant it only to stand for existing standing principles, that is, limiting to people who have actually been parties to intercepted communications. Do you know for a fact that your client's communication was actually intercepted? Yes, Your Honor. Well, the government of our complaint and the evidence we have in hand is that, yes, our plaintiff's internet communications have been intercepted, noting that the limits of what interception is, we only need to establish that the government acquired the communications. Our case doesn't require any kind of details about how the government targets terrorists, how it handles those communications after those communications are acquired, which also goes to the argument that we have not established a prima facie case, as well as the argument that we would necessarily need state secrets to make our case. Interception and electronic surveillance both turn simply on the acquisition by a device of a communication, and that is what we have alleged. Do you have anything more concrete than that to offer, that in fact a specific communication of your client was intercepted? We have evidence that all of the communications passing between AT&T's network and other networks in their Northern California facility have been intercepted, and so that would necessarily include the internet communications of our Northern California plaintiffs. So that would include everyone in Northern California that was connected with AT&T? And who communicated with anyone who wasn't on AT&T's network, yes, Your Honor. Okay, thank you. Thank you, Your Honor. Bill. Yes, and we'll give you a minute. I think your co-counsel ate a little bit of your time. Briefly, Your Honor, the government cites no case at all in support of their novel case-by-case prudential standing doctrine. There is no case that supports their argument. They didn't cite it in the brief, and they didn't cite anything in the argument today. They repeatedly referred to referring this to the oversight of the political branches. Well, Congress spoke in 1978. They responded to illegal conduct by the executive. They said we need to have not only criminal penalties but a private cause of action. And so the political branches have spoken, and what the government is trying to do now is get the court to abdicate its role to permit plaintiffs to assert that cause of action set forth by Congress and cited by President Carter. As to the standing point, there's already overwhelming evidence that plaintiffs have been aggrieved in the public record. We have statements by employees of the defendant that all Americans' communications, phone calls, computer, fax are being monitored, foreign and domestic. That's page one of our reply brief. There are new revelations coming from senior people of the NSA almost on a monthly basis. And we agree with Your Honor that the district court is the best place to parse all of the emerging public revelations about this extraordinary dragnet so that plaintiffs have the opportunity to proceed forward on their very important constitutional statutory claims. Now it seems like you're going back to your original position on the state secrets in FISA, but we'll ponder that. I think you've used your time. The case of Jewell v. the National Security Agency is submitted. I'd like to thank all counsel for your argument this morning, and we'll take a short break so that the next counsel in the following case can get themselves arranged.
judges: Pregerson, Hawkins, McKeown